## MASON v. PARKER.

Where a chattel mortgage is executed which describes the debt intended to be secured as the "aforesaid promissory notes," and it appears that two papers in the form of promissory notes, the one duly executed and attached to and preceding the mortgage, and the other written on the same paper with and immediately preceding the mortgage but unsigned by the maker, such mortgage sufficiently describes the debt intended to be secured to create a lien for the sum of the notes in favor of the mortgagee upon the mortgaged property ; and upon the trial of a claim case arising after foreclosure, upon levy of the mortgage execution, such description of the debt secured would suffice to admit in evidence the original mortgage, as against a general objection thereto, made by the claimant, that the mortgage debt was not described with such certainty in the mortgage as to create a valid lien upon the mortgaged property.

Submitted June 3, — Decided July 8, 1897.

Levy and claim. Before Judge Smith. Telfair superior court. April term, 1896.

To the levy of a mortgage fi. fa. in favor of C. B. Parker against W. O. Paxon upon a certain mule named Jack, a claim was interposed by B. F. Mason. Upon the trial of the claim there was a verdict finding the property subject. The claimant moved for a new trial, which was denied, and he excepted.

The material ground of the motion is, that the court allowed in evidence the original mortgage given by W. O. Paxon on the property levied on and claimed, dated December 21, 1885; plaintiff objecting that it did not specify nor sufficiently describe the debt it was given to secure. At the top of the mortgage and on the same sheet of paper was written a note for $102, payable to C. B. Parker, dated December 21, 1885, and complete in every respect, except that it was not signed; and attached to the mortgage by brass paper-fasteners was a similar note of the same date for $105, payable to C. B. Parker and signed by W. O. Paxon. The mortgage began as follows: "Georgia, Telfair county. For the purpose of securing the aforesaid promissory notes I hereby mortgage to the said C. B. Parker," etc., describing the property levied on. The mortgage was signed by W. O. Paxon, was duly recorded, and, except in its description of the debt, was full and complete in every respect. Further than by reference to the "aforesaid

promissory notes," it did not indicate who was the debtor nor the creditor, nor the number nor the amounts of the notes, nor any other particular concerning them. An entry of record by the clerk appeared on the back of the mortgage, but there was no entry of record upon the attached note. When the mortgage was offered in evidence the plaintiff testified: W. O. Paxon endorsed the two notes referred to in the mortgage and attached to it, and he agreed to give me this mortgage to secure them. One of the notes is written on the mortgage, and the other was attached thereto when the mortgage was given and signed by Paxon, and these are the "aforesaid promissory notes" referred to in the mortgage, and both of us understood it. Paxon agreed to sign both of them, and I supposed he had done so. Why he failed to do so I do not know, unless it was inadvertence. He was in possession of the property when he signed the mortgage, claiming it as his own.

In addition to the copy fi. fa. and the mortgage and notes described in the motion for a new trial, the following evidence was introduced: The claimant testified: I bought this mule Jack, the subject of this claim, after the mortgage was given and before it was foreclosed. Paid $75 for him, which I considered his full value. The mule was sold at receiver's sale, to the highest bidder, after due advertisement, as the property of Paxon. Judge Kibbee appointed the receiver and ordered the sale under some proceeding against Paxon. Mr. Smith, the attorney for Parker, notified bidders, before the sale, that Parker held this mortgage on the mule and would insist on his lien, but the receiver said the titles would be good, and that he would guarantee the title, and that the property was sold free from all incumbrances.

*W. L. & Warren Grice,* for plaintiff in error.

ATKINSON, J. The only question which we have deemed necessary to consider in the present case is as to whether, under the facts as they appear in the record, the promissory notes and mortgage offered and admitted in evidence by the presiding judge specified with such accuracy the debt which the mortgage intended to secure as to constitute it a legal lien upon the property described to secure the payment of the sums

represented in the promissory notes. It will be seen that the mortgage was in all respects regular. The only description, however, of the debt secured by it was by reference to a paper in the form of a promissory note which had been written immediately preceding the paper relied upon as giving the lien, but which was not itself signed independently of the signature of the maker as it appeared upon the mortgage proper. The other paper relied upon as the debt specified in the mortgage was a promissory note in due form signed by the alleged maker, and attached permanently by brass fastenings to the face of the mortgage. These notes were referred to in the mortgage as "the aforesaid promissory notes"; and the question is whether, under our statute, these papers taken altogether so identified the debt intended to be secured as to create a valid lien upon the property described in the mortgage. Section 2724 of our Civil Code dispenses with formalities in the execution of mortgages. Matters of form are no longer, under the Georgia law, considered of any consequence in determining whether or not a given instrument amounts to a mortgage; for the section of the code above referred to expressly provides, " No particular form is necessary to constitute a mortgage. It must clearly indicate the creation of a lien, specify the debt to secure which it is given, and the property upon which it is to take effect." There is no question in the present case but that the papers under consideration indicated the creation of a lien, or that they properly described the property upon which that lien was intended to take effect. The only question is whether the constating instruments spoke with such precision the debt which was intended to be secured as to enable the court judicially to declare that a lien was in fact created to secure the payment of that debt. It will be noted that both of these instruments relied upon as evidences of the debt preceded the instrument relied upon as creating the lien, and we think were referred to as " the aforesaid promissory notes." The use of the word "aforesaid," the notes themselves having been previously mentioned, might have been slightly inaccurate. It would probably have been better to have referred to them as the notes "hereinbefore written and hereto attached"; but aided, as the

circuit judge was, by the parol evidence which identified beyond question the notes offered in evidence as being the notes which were referred to as "the aforesaid promissory notes," we are fully pursuaded that he committed no error in admitting both the notes and mortgage in evidence. The unsigned note was in fact written upon the mortgage itself, and therefore the signing of the mortgage was itself an execution of the note. Certainly as against this claimant the mortgage lien was good, because, whether the mortgage was properly recorded or not, or whether it was necessary to aid the execution of the mortgage by extrinsic evidence, the claimant who undertakes to set up a title adverse to the lien of the mortgage parted with his money with full notice of the existence of the mortgage lien, and of the purpose of the mortgagor to insist upon his right. We think, therefore, that the court did not err in admitting in evidence the notes and mortgage, and, the verdict being otherwise in accordance with the law and the evidence, did not err in refusing to grant a new trial.

*Judgment affirmed. All the Justices concurring, except Little, J., dissenting.*